| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| CARIBBEAN ADJUSTERS INTERNATIONAL, LLC.<br><br>Parte Recurrida<br><br><br>v.<br><br><br><br>MARÍA RODRÍGUEZ NAZARIO, Y OTROS<br><br>Parte Peticionaria | KLAN202400751 | *Apelación acogida como Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>PO2022CV02021<br><br>Sala: 602<br><br>Sobre:<br>Cobro de Dinero – Ordinario, y otros |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Compareció ante este Tribunal la parte peticionaria, el Consejo de Titulares del Condominio Ponciana (en adelante, "Consejo de Titulares"), la Sra. María Rodríguez Nazario (en adelante, la "señora Rodríguez Nazario"), la Sra. Margarita Marques Gotia (en adelante, la "señora Marques Gotia"), el Sr. Hipólito Colón Castro (en adelante, el "señor Colón Castro"), la Sra. Maricelys Hérnandez Lamberty (en adelante, la "señora Hernández Lamberty") y la Sra. Lorraine M. Vázquez Maldonado (en adelante, la señora "Vázquez Maldonado") (en adelante y en conjunto, "los Peticionarios"), mediante petición de *certiorari* presentada el 8 de agosto de 2024. Nos solicitaron la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, el "TPI"), el 3 de julio de 2024 y notificada el 10 de julio de 2024. Mediante dicho dictamen, el TPI autorizó al Lcdo. Carlos Cabrera Colón, su esposa y la Sociedad Legal de Bienes Gananciales compuesta por ambos a intervenir en el pleito sobre cobro de dinero.

Número Identificador
SEN2024_____

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* y se *revoca* la *Orden* recurrida.

**I.**

El caso de epígrafe tuvo su origen el 25 de julio de 2022 con la presentación de una "**Demanda**" sobre cobro de dinero por parte de Caribbean Adjusters International, LCC (en adelante, "Caribbean Adjusters" o el "Recurrido") en contra del Consejo de Titulares, Multinational Insurance Corporation (en adelante, "Multinational"), la señora Rodríguez Nazario y todas las personas naturales que componen la Junta de Directores del Consejo de Titulares (en adelante y en conjunto, "los Recurridos"). En la misma, expresó que se dedica a la consultoría, preparación y ajustes de reclamaciones de seguros, debidamente autorizado por la Oficina del Comisionado de Seguros.

Indicó que el 7 de enero de 2020, el Condominio Ponciana sufrió graves daños estructurales que culminó en el desalojo de todos sus titulares por parte de la Oficina de Manejo de Emergencia del Municipio de Ponce. Alegó que, como consecuencia de los presuntos daños, el 23 de enero de 2020 suscribió con el Consejo de Titulares cierto contrato con el propósito de asesorar y asistir en la preparación, presentación, ajuste y cobro de todas las reclamaciones por los daños sufridos como consecuencia de los terremotos ocurridos el 7 de enero de 2020. Asimismo, aclaró que el referido acuerdo fue aprobado por la mayoría de los titulares presentes en la Asamblea Extraordinaria celebrada con el propósito de aprobar al aludido acuerdo. Manifestó que, como parte de su gestión, logró que la aseguradora Multinational le pagara al Condominio Ponciana la cantidad de $4,962,802.41, por concepto de los daños que sufrió la estructura.

Señaló que la presidenta de la Junta de Directores del condominio, la Lcda. Beltrán Soto, firmó cierto acuerdo intitulado "Sworn Statement in Proof of Loss", a través del cual el Consejo de Titulares aceptó el pago de $4,962,802.41. Puntualizó que dicho acuerdo fue aceptado por el Consejo de Titulares y no fue impugnado ante el foro competente, adviniendo así,

en final y firme. Expuso que luego de cumplir con su parte del acuerdo, le presentó al Consejo de Titulares una factura por los servicios prestados por la cantidad de $496,280.24, equivalentes al diez por ciento (10%) de la suma recibida, según lo que presuntamente las partes pactaron. Por último, arguyó que los miembros de la Junta de Directores del Consejo de Titulares han realizado acciones dirigidas a provocar el incumplimiento de su relación contractual y afectar sus intereses.

En armonía con lo anterior, le peticionó al TPI que ordenara: (1) al Consejo de Titulares el pago de $496,280.24, por concepto de servicios prestados, (2) a Multinational a pagar la parte adeudada, según el acuerdo de pago directo, (3) a la nueva directiva del Consejo de Titulares, en su carácter personal, al pago solidario de la cantidad de $496,280.14, por concepto de los daños sufridos por su alegada intervención torticera en el acuerdo habido entre el Consejo de Titulares y Caribbean Adjusters, (4) contra los Recurridos el pago de los intereses acumulados desde la presentación de la "**Demanda**", (5) el pago de honorarios de abogado por la cantidad de $15,000.00 y (6) cualquier otro remedio que proceda en derecho.

Posteriormente, el 6 de octubre de 2022, el Consejo de Titulares y la señora Rodríguez Nazario presentaron su "**Contestación a la Demanda y Reconvención**" mediante la cual negaron la mayoría de las alegaciones expuestas en su contra. También hicieron referencia al caso Juan Wilberto Howe Hernández y otros v. Consejo de Titulares del Condominio Ponciana y otros, caso núm. PO2021CV0038, a través del cual se impugnó las actuaciones de la Lcda. Beltrán Soto como presidenta de la Junta de Directores del Condominio. Además, alegaron afirmativamente que la Asamblea Extraordinaria del 23 de enero de 2020 fue interrumpida por agentes del Municipio de Ponce, por no tener permisos para el uso de las facilidades donde se estaba celebrando y que ésta se condujo en un ambiente bajo presión, temor y desesperación mientras los sismos continuaban afectando al país. Igualmente, expresaron que el Consejo de

Titulares no está incumpliendo con una relación contractual debido a que no existe contrato válido alguno.

Por su parte, en su *Reconvención* sostuvo que el alegado contrato suscrito con Caribbean Adjusters es nulo *ab initio*. Expresó que el Recurrido se enriquece injustamente al pretender cobrar una suma de $496,280.24 más sus intereses. Enunció que Caribbean Adjusters ha intervenido en la relación contractual entre el Consejo de Titulares y Multinational con el único propósito de cobrar una suma de dinero que no le corresponde. Asimismo, expresó que el Recurrido realizó cierto informe pericial que establece que el Condominio Ponciana es reparable, lo que provocó que Multinational no realizara una oferta por el tope de su póliza de daños por terremotos. Finalmente, sostuvo que Carribbean Adjusters le ha causado daños continuados al Consejo de Titulares.

A tenor con lo anterior, le solicitó al TPI que declare "Ha Lugar" la *Reconvención,* determine que el contrato es nulo y ordene al Recurrido al pago de $4,575,197.59, por interferencia torticera, así como la cantidad de $1,320,000.00 en concepto de angustias mentales y daños morales y una suma razonable por concepto de costas y honorarios de abogados. Posteriormente, Caribbean Adjusters presentó "**Demanda Enmendada**" para incluir los nombres de ciertos integrantes de la Junta de Directores del Consejo de Titulares. El 14 de diciembre de 2022, Multinational presentó "**Contestación a Demanda Enmendada y Reconvención (Interpleader) al amparo de la Regla 19 de Procedimiento Civil**". En lo correspondiente a la *Reconvención sobre Interpleader*, Multinational solicitó al TPI que se determinara el derecho al cobro de la cuantía reclamada por Caribbean Adjusters en la "**Demanda Enmendada**", calculada porcentualmente a base de la cantidad de $4,962,802.41, según acordada en una presunta transacción entre Multinational y el Consejo de Titulares, con la imposición de costas, gastos, intereses y honorarios de abogado a Caribbean Adjusters y al Consejo de Titulares.

Ese mismo día, Multinational también presentó "**Demanda contra Coparte al amparo de la Regla 19 de Procedimiento Civil**

**(Interpleader)**" (en adelante, "Demanda contra Coparte"). Mediante la misma, solicitó los mismos remedios que en la *Reconvención sobre Interpleader* que interpuso. Así las cosas, el 30 de enero de 2023, el Lcdo. Cabrera Colón, la Sra. Lourdes M. Peña Santiago (en adelante, la "señora Peña Santiago") y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, "matrimonio Cabrera Peña") presentaron una "**Urgente Solicitud de Intervención de Acuerdo con la Regla 21.2 de Procedimiento Civil**" (en adelante, "Solicitud de Intervención") mediante la cual argumentaron que el contrato entre Caribbean Adjusters y el Consejo de Titulares fue declarado válido por parte del Departamento de Asuntos del Consumidor (en adelante, "DACo"), en el caso Hernández v. Junta Directores Condominio Ponciana, caso núm. C-SAN-2020-007302.

Expresaron que el Recurrido había acordado con la Junta de Directores realizar un descuento del 2% de la cuantía recibida si efectuaban el pago correspondiente, lo cual no había ocurrido. Manifestaron que el hecho de que no hayan efectuado el pago los afecta directamente y que asegurarse que se otorgue el aludido descuento les favorecía. Indicaron que son parte del Consejo de Titulares por lo que cualquier determinación que emita el Tribunal les impacta. Por tal razón, solicitaron la intervención al presente pleito.

Más adelante, el 2 de marzo de 2023, el Consejo de Titulares presentó una "**Moción en Oposición a Urgente Solicitud de Intervención de Acuerdo con la Regla 21.2 de Procedimiento Civil**" (en adelante, "Moción en Oposición"), a través de la cual alegaron que el TPI no debe permitir la intervención del matrimonio Cabrera Peña. En detalle, sostuvieron que: (1) el DACo no validó el contrato en disputa, (2) el alegado ahorro que mueve al matrimonio Cabrera Peña a solicitar la intervención solo representa una suma de $1,513.65, lo cual no promueve la economía procesal, (3) la verdadera intención del matrimonio Cabrera Peña es intervenir para abogar por la validez del contrato entre las partes y ocultar el vicio sobre el consentimiento del cual adolece y (4) que de surgir algún dictamen en contra del Consejo de Titulares, el impacto a los derechos del

matrimonio Cabrera Peña es insignificante, ya que su participación consiste de un 1.525%. A tenor con lo anterior, le solicitó al TPI que declare "No Ha Lugar" la *Solicitud de Intervención* interpuesta por el matrimonio Cabrera Peña.

Por su parte, el 4 de marzo de 2024, el licenciado Edgardo Pérez Gutiérrez (en adelante, el "Lcdo. Pérez Gutiérrez") presentó una solicitud intitulada "**Moción Oposición a Intervención Licenciado Carlos M. Cabrera Colón**", a través de la cual enumeró los casos en que el Lcdo. Cabrera Colón contra el Condominio Ponciana. De igual manera, afirmó que el Lcdo. Cabrera Colón es una persona "hiper-litigiosa" que ha sido sancionado por temerario y que ha radicado casos totalmente frívolos en contra del Condominio Ponciana. Además, señaló que este fue despedido de su puesto como abogado del Condominio en una de las Asambleas celebradas. Por último, adujo que permitir su intervención atrasaría el caso.

Posteriormente, el 13 de junio de 2024, el Consejo de Titulares presentó una "**Urgente Moción en Auxilio de Jurisdicción y en Solicitud de Remedio**" mediante la cual reafirmó su postura y explicó que el matrimonio Cabrera Peña no posee un interés protegido diferente al del Consejo de Titulares, el cual ya está siendo debidamente representado. Además, expresó que el propósito del matrimonio Cabrera Peña para intervenir en el caso es validar un contrato que fue firmado sin el consentimiento legal requerido del Consejo de Titulares, mientras el Lcdo. Cabrera Colón se desempeñaba como tesorero de la Junta de Directores del Consejo de Titulares.

Finalmente, el 10 de julio de 2024, el foro primario emitió una *Orden* a través de la cual autorizó la intervención del matrimonio Cabrera Peña en el pleito sobre cobro de dinero, bajo el fundamento de que su interés propietario podría verse afectado.

Inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

PRIMER ERROR:
Erró el Honorable Tribunal de Primera Instancia al determinar que Carlos M. Cabrera Colón cumple con los requisitos necesarios para intervenir en el presente caso.

SEGUNDO ERROR:
Erró el Honorable Tribunal de Primera Instancia al permitir la intervención basada únicamente en el interés propietario de Cabrera Colón.

TERCER ERROR:
Erró el Honorable Tribunal de Primera Instancia al no reconocer que Cabrera Colón ya está representado por los abogados del Consejo de Titulares, lo que hace redundante y supérflua su intervención individual en el litigio.

El 19 de agosto de 2024, emitimos *Resolución* mediante la cual le concedimos a la parte recurrida un término para presentar su alegato en oposición al recurso. Dicho plazo ha transcurrido, sin que la parte recurrida hubiera comparecido o presentado prórroga a esos efectos.

En vista de lo anterior, procedemos a resolver los méritos del recurso, sin el beneficio de su comparecencia.

**II.**

**A.**

La Regla 21 de Procedimiento Civil regula lo concerniente al mecanismo de intervención en los procedimientos judiciales. 32 LPRA Ap. V, R. 21. Ésta es una figura procesal que permite a un tercero, de manera voluntaria o por necesidad, unirse a un litigio pendiente ante los tribunales, solicitando su participación en el mismo. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 79 (2011) (citando a J. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 427). Cabe subrayar que esta Regla constituye simplemente un instrumento procesal y, por tal razón, **no es una fuente de derechos sustantivos ni establece una causa de acción**. IG Builders *et al* v. BBVAPR, 185 DPR 307, 320 (2012). **Su objetivo es lograr un equilibrio entre la economía procesal y la necesidad de que los casos se resuelvan en un tiempo adecuado**. Íd., pág. 321.

Nuestro ordenamiento jurídico distingue entre dos tipos de intervención, a saber: (1) la intervención como cuestión de derecho y (2) la

intervención permisible. S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 79. La primera de estas modalidades de intervención se aplica cuando la ley o las Reglas de Procedimiento Civil le confieren un derecho incondicional a intervenir en el pleito o cuando la persona tiene un derecho o interés en la propiedad que podría verse afectado por la decisión final del caso. 32 LPRA Ap. V, R. 21.1.

Para establecer ese derecho, se requiere un reclamo claro y concreto sobre el alegado derecho o interés relacionado con la propiedad o asunto objeto del litigio. S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 79. Es decir, el criterio a emplear es de carácter pragmático, puesto que se debe demostrar que el interés o derecho podría quedar perjudicado. Chase Manhattan Bank v. Nesglo, Inc., 111 DPR 767, 770 (1981). **En otras palabras, una solicitud de intervención de esta índole requiere que primero se analice si existe un interés que amerite protección y segundo, si ese interés quedaría afectado por la ausencia del interventor en el caso**. IG Builders *et al* v. BBVAPR, *supra*, pág. 321. Tomando todo lo anterior como punto de partida, el Tribunal Supremo resolvió que "**el criterio que ha de utilizarse para determinar si se permite o no la intervención de una parte depende del 'interés en la economía procesal representada por la solución en un solo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente'**". S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 80 (énfasis suplido).

Por su parte, la intervención permisible tiene lugar cuando la ley otorga a una persona el derecho a intervenir o cuando la reclamación o defensa de esa persona está relacionada con una cuestión de hecho o de derecho común al pleito principal. 32 LPRA Ap. V, R. 21.2. Cualquiera que desee intervenir en un pleito deberá exponer los motivos en los que se apoya su intervención, así como las alegaciones que fundamenten la reclamación o defensa que justifica su participación. 32 LPRA Ap. V, R. 21.4.

El análisis de este mecanismo procesal debe tener un enfoque conceptual, ya que su objetivo es proteger a personas con intereses variados, tanto legales como económicos. R. Mix Concrete v. R. Arellano & Co., 110 DPR 869, 873 (1981). Como se percibe, esta evaluación puede variar de un caso a otro, ya que la decisión depende del equilibrio entre valores de la economía procesal en los procedimientos judiciales, que incluye la acumulación de controversias y la pronta resolución del caso pendiente. Chase Manhattan Bank v. Nesglo, Inc., *supra*, pág. 770. Finalmente, aunque nuestro más alto foro ha señalado que esta Regla debe ser interpretada de manera flexible, esto no significa que todas las solicitudes de intervención deban ser aceptadas ni que cualquier duda sobre su aprobación deba resolverse a favor del solicitante. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 201(2009).

**B**.

La Ley Núm. 129-2020, según enmendada, conocida como la "Ley de Condominios de Puerto Rico" (en adelante, "Ley Núm. 129"), fue promulgada con el fin ulterior de viabilizar la propiedad individual sobre un apartamento que constituye una parte de un edificio o inmueble bajo el régimen de propiedad horizontal. 31 LPRA sec. 1921a. Así, se le otorgó personalidad jurídica al órgano rector formado por todos los propietarios del condominio, conocido como el consejo de titulares. 31 LPRA sec. 1921b(h). Este último representa la máxima autoridad en la administración de los inmuebles sometidos al régimen de propiedad horizontal. 31 LPRA sec. 1922t. Su objetivo es promover el buen funcionamiento del sistema de propiedad horizontal, **mientras protege los intereses de sus miembros**. Bravman, González v. Consejo de Titulares, 183 DPR 827, 852 (2011). Entre sus poderes y deberes se encuentra el de "intervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común". 31 LPRA sec. 1922u(j).

En consonancia con lo anterior, el director o la junta de directores es considerado el órgano ejecutivo del colectivo de titulares. 31 LPRA sec.

1922y. Entre sus responsabilidades se encuentra: (1) atender todo lo relacionado con la administración del régimen, (2) dirigir los asuntos financieros del condominio, incluyendo las partidas de ingresos y gastos que afecten al inmueble, (3) atender la preservación del inmueble y disponer para las reparaciones ordinarias e (4) implementar los controles y procedimientos adecuados para proteger los activos del Consejo de Titulares. 31 LPRA sec. 1922y. Así pues, el presidente de la junta de directores actuará como representante de la comunidad en los asuntos que le afecten, tanto en juicio como fuera de él, y dirigirá las asambleas del consejo. 31 LPRA sec. 1922z.

Cuando se trate de acciones para hacer cumplir los acuerdos del consejo de titulares o cuando este último o la junta de directores deban comparecer en un litigio como demandado o querellado, el presidente puede asistir en representación de dichos organismos y exponer las acciones y defensas que considere apropiadas. Íd. Cualquier acuerdo de transacción judicial o extrajudicial que supere la suma de cinco mil dólares ($5,000) deberá contar con la aprobación del consejo de titulares. En caso de que se trate de condominios no residenciales, el reglamento puede establecer una suma distinta. Íd. Por último, **en todos los casos, se asumirá que el presidente dispone de la autorización del consejo de titulares para comparecer a nombre de ellos en los foros pertinentes**. Íd.

**III.**

En el presente caso, los Peticionarios nos solicitaron la revocación de la *Orden* del TPI, a través de la cual se le autorizó al matrimonio Cabrera Peña a intervenir en el pleito de autos.

Los tres señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de manera conjunta. En síntesis, los Peticionarios sostienen que el TPI erró al: (1) determinar que el matrimonio Cabrera Peña cumple con los requisitos necesarios para intervenir, (2) permitir la intervención basada únicamente en el interés propietario del matrimonio Cabrera Peña, y (3) al no reconocer que el matrimonio Cabrera

Peña ya está representado por los abogados del Consejo de Titulares. Tienen razón. Veamos.

No existe controversia sobre el hecho de que el Condominio Ponciana sufrió daños estructurales severos a causa de los terremotos ocurridos a principios del año 2020, que resultó en el desalojo de todos sus titulares por parte de la Oficina de Manejo de Emergencias del Municipio de Ponce. A raíz de esto, el 23 de enero de 2020, el Consejo de Titulares del referido Condominio presuntamente aprobó que se contratara con Caribbean Adjusters para reclamarle por los daños sufridos a Multinational. Posteriormente, alegadamente la entonces presidenta de la Junta de Directores del Condomonio, la Lcda. Beltrán Soto, en representación de los titulares, firmó otro acuerdo en el que aceptó una suma de $4,962,802.41, por concepto de los daños sufridos.

Más adelante, Caribbean Adjusters presentó una "**Demanda**" sobre cobro de dinero en contra del Consejo de Titulares y los integrantes de la Junta de Directores del Condominio. Por un lado, Caribbean Adjusters sostiene que el Consejo de Titulares le adeuda la suma de $496,280.24, equivalentes al diez por ciento (10%) de la suma negociada con Multinational como resarcimiento por los daños sufridos durante los eventos telúricos, mientras que por vía de la *Reconvención* los Peticionarios afirman que el contrato en cuestión es nulo, dado que la Asamblea Extraordinaria se llevó a cabo en un ambiente de presión, temor y angustia.

Teniendo dichas controversias pendientes, Multinational presentó la *Reconvención de Interpleader* y la *Demanda contra Coparte*, ambas con la intención de que el TPI determine el derecho que ostenta Caribbean Adjusters a la suma reclamada en la "**Demanda**". Así las cosas, el 30 de enero de 2023, el matrimonio Cabrera Peña solicitó su intervención al presente pleito. Tras varios trámites procesales, y pese a la oposición del Consejo de Titulares, el 10 de julio de 2024, el TPI permitió su participación en el caso bajo el fundamento de que éste posee un interés propietario. La controversia que nos ocupa se origina a partir de estos hechos.

Conforme hemos adelantado en los acápites anteriores, el mecanismo de intervención permite a una persona que no es parte en un pleito, solicitar su participación en el mismo ya sea voluntariamente o por necesidad. S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 79. Esta figura legal no otorga derechos sustantivos ni establece causas de acción. IG Builders et al v. BBVAPR, *supra*, pág. 320. Entre los dos métodos de participación que permite la Regla 21 de las Reglas de Procedimiento Civil, *supra*, se encuentra la intervención como cuestión de derecho. Mediante esta modalidad, un tercero puede intervenir en un litigio activo ante los tribunales, cuando se le reconozca un derecho incondicional a hacerlo o cuando posea algún derecho o interés en la propiedad objeto de la controversia. 32 LPRA Ap. V, R. 21.1. El enfoque a utilizar en este tipo de situaciones es de naturaleza pragmática, ya que es necesario demostrar que el derecho o interés podría verse afectado negativamente. Chase Manhattan Bank v. Nesglo, Inc., *supra*, pag. 770. Así pues, se ha determinado taxativamente que el criterio rector que los tribunales debemos utilizar para determinar si se permite o no la intervención de una parte está necesariamente supeditado al interés en la economía procesal representada por la solución en un solo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente. S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 80

Por su parte, nuestro ordenamiento jurídico reconoce que el consejo de titulares posee legitimación activa para acudir ante un foro judicial para presentar acciones a nombre de sus miembros, puesto que entre los deberes que le confiere la Ley de Condominios, *supra*, se encuentra "intervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad". 31 LPRA sec. 1922t (j). Este es el órgano rector y deliberativo del condominio que constituye la autoridad suprema sobre la administración del inmueble sujeto al régimen de propiedad horizontal. 31 LPR sec. 1921b y 1922t. **El objetivo principal del consejo de titulares es resguardar los intereses de sus integrantes**. Bravman, Gonzalez v.

Consejo de Titulares, *supra*, pág. 852. Para cumplir tal fin, se le otorgó al presidente de la junta de directores la potestad de asistir a los juicios, en representación de los titulares del condominio. 31 LPRA sec. 1922z. Igualmente, en cualquier caso, se infiere que el presidente tiene la autorización del consejo de titulares para comparecer en nombre de ellos en los foros correspondientes. Íd.

Tras un análisis minucioso del expediente ante nuestra consideración, hemos llegado a la conclusión de que no procedía que el TPI autorizara la intervención del matrimonio Cabrera Peña en el pleito de autos. De la determinación recurrida se puede inferir que el foro primario entendió que en el presente caso la participación del matrimonio Cabrera Peña era una intervención como cuestión de derecho. A esos efectos, se hacía indispensable que se evaluaran los requisitos impuestos por nuestro Tribunal Supremo, los cuales se limitan a demostrar que el interventor posee un interés o derecho relacionado con la propiedad objeto del litigio y que éstos pueden verse menoscabados por la determinación final del caso. Chase Manhattan Bank v. Nesglo, Inc., *supra*, pág. 770. Todo ello, enmarcado en establecer un balance entre el interés de preservar la economía procesal a través de la solución en un solo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente.

El matrimonio Cabrera Peña supedita su interés relacionado en la controversia, al hecho de que el promovente de la "**Demanda**" no es el Consejo de Titulares sino un tercero al cual presuntamente le adeudan un dinero y de pagársele según solicitado, afectaría a los titulares en su carácter personal. Esto, según su postura, tiene un efecto sobre los intereses propietarios, de uso y disfrute de sus apartamentos y de las áreas comunes limitadas que justificaba su intervención. Asimismo, sostienen que la determinación del Consejo de Titulares de no efectuar el desembolso de los fondos correspondientes a la cuantía alegadamente recibida por parte de Multinational los afectaría.

Analizados dichos argumentos, podríamos concluir que el matrimonio Cabrera Peña posee un interés sobre la controversia traída por Caribbean Adjusters en su "**Demanda**", la cual, fue reiterada por Multinational en la *Reconvención de Interpleader* y en la *Demanda contra Coparte*. Ahora bien, tal y como hemos anticipado, el ejercicio adjudicativo que los tribunales debemos efectuar no se puede limitar únicamente a la existencia de un derecho o interés sobre el asunto en controversia. Establecido ello, se requiere que el interventor demuestre cómo dicho derecho o interés podría verse menoscabado como resultado del litigio. Esto, a su vez, conllevará que se efectúe un balance entre el interés en la economía procesal representada por la solución en un solo pleito de varias cuestiones relacionadas entre sí y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente.

Si bien no podemos hacernos de la vista larga en cuanto al interés esgrimido por el matrimonio Cabrera Peña sobre uno de los asuntos en controversia, no es menos cierto que dicho interés no se vería afectado con la disposición del caso. Nótese que el matrimonio Cabrera Peña solicita su intervención como **titulares** del Condominio Ponciana, es decir, **como integrantes del Consejo de Titulares**, quien por disposición estatutaria y jurisprudencial es la máxima autoridad en la administración de los inmuebles sometidos al régimen de propiedad horizontal y su fin ulterior es proteger los intereses de sus miembros. Bravman, González v. Consejo de Titulares, *supra*, pág. 852. De la solicitud de intervención presentada por el matrimonio Cabrera Peña, no hemos hallado bases contundentes que nos conduzcan a la conclusión de que el Consejo de Titulares no está defendiendo, no sólo sus intereses o derechos, sino los de todos los titulares del Condominio Ponciana, que podría resultar en un menoscabo de los mismos.

Todo lo contrario, un examen detenido del expediente electrónico del Sistema Unificado de Manejo y Administración de los Casos (SUMAC), así como del legajo apelativo ante nos, revela que el Consejo de Titulares no sólo contestó la "**Demanda**" e invocó unas defensas, sino que también

incoó una *Reconvención* en la que arguye que: (1) el contrato bajo el cual Caribbean Adjusters reclama la deuda es nulo, (2) Caribbean Adjusters ha intervenido intencionalmente en su reclamación por los daños ocasionados por los terremotos ante Multinational, puesto que alegadamente no representó adecuadamente sus intereses y procuró una indemnización menor, dejando de percibir el Consejo de Titulares la cantidad de $4,757,197.59, al no haber declarado en pérdida total el edificio en donde ubica el Condominio, y (3) que han sufrido daños y perjuicios ascendentes a $1,320,000.00.

Es decir, lejos de dejar de efectuar planteamientos en beneficio de todos los titulares, **incluyendo al matrimonio Cabrera Peña**, el Consejo de Titulares está cumpliendo con sus deberes legales de resguardar los intereses de sus integrantes. De hecho, en caso de que el Consejo de Titulares prevalezca en sus planteamientos, el matrimonio Cabrera Peña podría ubicarse en un mejor escenario económico del que arguye en su *Solicitud de Intervención* y que es la base del interés que ostentan en la controversia que se dilucida ante el TPI.

Establecido lo anterior, nos corresponde efectuar un balance entre el interés de la economía procesal, a través de la solución en un solo pleito de varias cuestiones relacionadas entre sí, y el interés en evitar que los pleitos se compliquen y eternicen innecesariamente. De conformidad con nuestro análisis, permitir la intervención del matrimonio Cabrera Peña no abonaría al interés de la economía procesal. Adviértase que el derecho reclamado en su *Solicitud de Intervención* ya está protegido por el Consejo de Titulares. No podemos perder de perspectiva que el derecho a intervenir que expone el matrimonio Cabrera Peña está predicado en la cuantía que recibirá como parte de las negociaciones sobre la indemnización que debe percibir el Consejo de Titulares por los daños reclamados a Multinational. Ese es precisamente uno de los asuntos medulares que están planteados ante el TPI y que el Consejo de Titulares, por vía de la *Reconvención*, está esgrimiendo con el objetivo de que no se limite a los $4,962,802.41 y se otorgue una cuantía mayor a esta última, ascendente a $9,720,000.00.

Por tanto, permitir la reclamación del matrimonio Cabrera Peña en este pleito no abona a la solución rápida y económica del litigio, pues el derecho reclamado para justificar su intervención ya lo está protegiendo el Consejo de Titulares. Es decir, estaríamos permitiendo que el matrimonio Cabrera Peña se convierta en parte para reclamar un interés que ya está defendido y que crearía un escenario jurídico redundante. Además, somos de la opinión de que mantener la determinación recurrida complicaría innecesariamente un ya complejo litigio con múltiples partes. Esto, pues el TPI tiene ante sí una demanda, dos reconvenciones y una demanda contra coparte; cada una con sus correspondientes planteamientos de hechos y de derecho que requerirán de un amplio descubrimiento de prueba. Si a ello le abonamos el elemento pragmático que debe regir en este tipo de controversia, se podría abrir la puerta a que **todos** los titulares del Condominio Ponciana reclamen su derecho a intervenir al caso de autos. Ello, definitivamente, sería contrario a los intereses que nuestro Tribunal Supremo ha delineado como guía para adjudicar solicitudes de intervención en los pleitos.

En suma, las controversias planteadas ante nuestra consideración no presentan el típico asunto discrecional sobre el manejo del caso, sino que la evaluación que venimos compelidos a efectuar de la determinación recurrida está intrínsecamente atada a unos intereses y principios arraigados a nuestra ordenamiento procesal. Aquí, estamos en la obligación de sopesar el interés consagrado en la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1, a los efectos de que dicho cuerpo reglamentario debe interpretarse "de forma que garanticen una solución justa, rápida y económica de todo procedimiento" y que los pleitos no perduren por periodos de tiempo prolongados injustificadamente.

Indistintamente de todo lo anterior, no podemos olvidar que cualquier transacción que en su día lleve a cabo la Junta de Directores por sí misma o por conducto de un tercero a favor de los titulares para recibir una indemnización por los daños ocasionados por los terremotos por parte de Multinational requiere, como requisito *sine qua non*, la aprobación del

Consejo de Titulares al cual pertenece el matrimonio Cabrera Peña. Si lo anterior le sumamos que, jurídicamente, el matrimonio Cabrera Peña retiene cualquier tipo de reclamación contra el Consejo de Titulares o la Junta de Directores en el foro correspondiente, si entiende que sus intereses no fueron adecuadamente representados.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *expide* el auto de *certiorari* y se *revoca* la *Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                        Lcda. Lilia M. Oquendo Solís
                    Secretaria del Tribunal de Apelaciones